UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M.,<br>　　　　　Plaintiff,<br>　　v.<br>KILOLO KIJAKAZI, et al.,<br>　　　　　Defendants. | Case No.  23-cv-03198-SVK<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 12, 18 |

Plaintiff appeals from the final decision of the Commissioner of Social Security, which denied his application for supplemental security income. The Parties have consented to the jurisdiction of a magistrate judge. Dkt. 8, 10. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion for summary judgment (Dkt. 12), **DENIES** Defendant Commissioner's cross-motion for summary judgment (Dkt. 18), and **REMANDS** this case for further proceedings.

**I.    BACKGROUND**

On or about March 30, 2021, Plaintiff filed an application for Title XVI Supplemental Security Income. *See* Dkt. 11 (Administrative Record ("AR")) 186-193. The claim was denied initially on August 3, 2021 (AR 93-97) and denied on reconsideration on October 15, 2021 (AR 105-110). On April 11, 2022 an Administrative Law Judge ("ALJ") held a telephonic hearing. AR 32-58. On June 30, 2022, the ALJ denied Plaintiff's claims. AR 10-31 (the "ALJ Decision"). The ALJ concluded that Plaintiff has the following severe impairments: anxiety, dysthymic disorder, attention-deficit hyperactivity disorder (ADHD), and posttraumatic stress disorder (PTSD). AR 16. The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. *Id*. The ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC")

to perform a full range of work at all exertional levels but with certain nonexertional limitations. AR 18-24.  The ALJ determined that Plaintiff was unable to perform his past relevant work as a coffee maker.  AR 25.  However, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as sweeper, washer, and furniture cleaner.  AR 25-26.  Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, since October 2, 2020.  AR 26.[1]

The Appeals Council subsequently denied review of the ALJ Decision.  AR 1-6.  Plaintiff timely filed an action in this District, seeking review of the ALJ Decision.  Dkt. 1.

In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment.  Dkt. 12 (Plaintiff's motion for summary judgment); Dkt. 18 (Defendant's cross-motion for summary judgment).  The cross-motions for summary judgment are now ready for decision without oral argument.

## II. ISSUES FOR REVIEW

1. Did the ALJ properly evaluate Plaintiff's credibility?
2. Did the ALJ err in ignoring the third-party statement of Plaintiff's father?
3. Did the ALJ properly evaluate the medical evidence?
4. Were the ALJ's social interaction limitations supported by substantial evidence?

## III. STANDARD OF REVIEW

This Court is authorized to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g).  Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial

---

[1] Supplemental security income is not payable prior to the month following the month in which the application was filed.  20 C.F.R. § 416.335.  The ALJ Decision states that Plaintiff protectively filed an application for supplemental security income on October 2, 2020.  AR 13.  It therefore appears that the ALJ decided whether Plaintiff was disabled as of that date rather than the date he alleged his disability began (August 31, 2019).  *See* AR 26.  The Court notes that the administrative record and both parties' briefs state that the application was filed on March 31, 2021(AR 186; Dkt. 12 at 1; Dkt. 18 at 1), not the date used by the ALJ.

2

evidence or if it is based on the application of improper legal standards. *Id*. at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, 587 U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks and citation omitted).

**IV.   DISCUSSION**

    **A. Issue One:  Evaluation of Plaintiff's credibility**

"When a claimant presents objective medical evidence establishing an impairment that could reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing reasons," unless there is affirmative evidence of malingering. *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) (internal quotation marks and citations omitted). The Parties agree that the Ninth Circuit requires that the ALJ's reasons for discounting Plaintiff's allegations be "specific, clear, and convincing." Dkt. 12 at 8; Dkt. 18 at 3.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony regarding his symptoms and limitations. Dkt. 12 at 8-13. According to the

3

1    ALJ:

2    > [Plaintiff] reported trouble remembering, completing tasks, concentration, and
3    > understanding (Ex. 5E/6).  He stated he has a "hard time completing tasks, focusing,
     > learning new material, [and] figuring out how to complete goals" (id.).  In addition, he
4    > reported, "Moments where I cannot remember something I just read … Often incapable
     > of action … No sense of time" (id. at 1).  Finally, the claimant reported his "flashbacks
5    > and nightmares interfered with his daily activities and that trauma and associated
     > aggressive behaviors impaired his social relationships (Ex. 7F/6).
6

7    AR 19.

8    The ALJ then stated:

9    > However, I find no persuasive corroborating evidence to support the duration,
10   > frequency, and intensity of the symptoms and limitations alleged as disabling.  No
     > objective evidence of physiological abnormality is reasonably expected to result in the
11   > degree of limitation alleged.  Routine conservative treatment and recommendations
     > suggest symptoms are not as limiting as alleged.  In fact, he reported the ability to
12   > cook, clean, drive, shop, manage money, and use a computer (e.g., Ex. 5E and 4F).  He
     > was in college until at least the summer of 2020 and possibly later (see, e.g., Ex. 2F/7
13   > and 5F/2 indicating he is working on a degree in September of 2021).  His activities
     > have included running, gardening, and taking guitar lessons (e.g., Ex. 2F/12 and 9F/6;
14   > see also 5E).  Moreover, he has reported playing guitar, teaching music, hiking with
15   > friends, and helping his parents (Ex. 3F/6).

16   AR 19-20.

17   As a preliminary matter, Plaintiff argues that the ALJ erred in making this adverse

18   credibility finding because she did not explain what portions of Plaintiff's testimony she found not

19   credible or how the summarized evidence supports her conclusions and conflicts with Plaintiff's

20   testimony.  Dkt. 12 at 8.  An ALJ errs by making "general rather than specific findings in rejecting

21   Plaintiff's testimony wholesale and without pointing to any evidence that could potentially

22   undermine even portions of Plaintiff's testimony." *Tubolino v. Berryhill*, No. 18-cv-02511-RMI,

23   2019 WL 4674433, at *9 (N.D. Cal. Sep. 25, 2019).  Here, although the ALJ briefly summarized

24   Plaintiff's testimony and cited some specific evidence in support of her credibility findings, the

25   ALJ failed to explain how Plaintiff's activities of daily living ("ADLs"), as the ALJ characterized

26   them, are inconsistent with Plaintiff's testimony.  In fact, the ALJ actually incorporated additional

27   limitations into Plaintiff's RFC to account for Plaintiff's challenges in the areas about which he

28   testified.  For example, the ALJ explained that Plaintiff's RFC precludes fast-paced work and

includes social interaction limitations because ALJ found Plaintiff "does have some deficits in managing stressors" and has "attentional difficulties." AR 21-22. The ALJ's discussion of these issues is hard to square with her adverse credibility finding.

      Plaintiff also argues that even if the ALJ adequately identified the portions of Plaintiff's testimony she found not credible and the allegedly conflicting evidence, the reasons cited by the ALJ to discredit Plaintiff are not clear, convincing, or supported by substantial evidence, for several reasons. First, Plaintiff argues that where there are severe conditions that could cause the symptoms of which he claims, he was not required to provide objective medical findings to corroborate the degree of symptoms. Dkt. 12 at 8-9. In support of this argument, Plaintiff cites the ALJ's statements that there was "no persuasive corroborating evidence" and "no objective evidence" to support the degree of limitation alleged by Plaintiff. Dkt. 12 at 9 (citing AR 19). However, the regulations state that the ALJ will evaluate a claimant's statements about the intensity, persistence, and limiting effects of his symptoms "in relation to the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4). Plaintiff has not shown that the ALJ imposed an unwarranted evidentiary burden; instead, it appears that the ALJ analyzed the credibility of Plaintiff's statements in light of the medical and other evidence, as contemplated by the regulations.

      Second, Plaintiff argues that the ALJ's reference to "conservative treatment" is not a sufficient basis upon which to discredit Plaintiff's testimony. Dkt. 12 at 10. Plaintiff asserts that "a regimen of prescription psychotropic medications, as has been prescribed for [Plaintiff], is not fairly characterized as 'conservative' treatment." *Id.* (citations omitted). Plaintiff further argues that in any event, "conservative treatment" may be grounds to discount a claimant's testimony about the severity of symptoms only if the ALJ specifies what more aggressive treatment was recommended by his providers or would be sufficient to substantiate Plaintiff's claims. *Id.* The Commissioner does not directly address this point, but instead asserts that the ALJ's characterization of Plaintiff's treatment as "routine conservative" was "not the important consideration" in the ALJ's credibility determination. Dkt. 18 at 6. In any event, even if the Plaintiff's treatment with various prescription medications could be considered conservative

5

1    treatment in the abstract, the ALJ erred in relying on that treatment to discount Plaintiff's

2    testimony because the ALJ failed to identify more aggressive treatment options that were

3    available.  *See B.-P. v. Saul*, No. 20-CV-02088-JCS, 2021 WL 2207336, at *13 (N.D. Cal. June 1,

4    2021); *see also Lapeirre-Gutt v. Astrue*, 382 F. Appx. 662, 664 (9th Cir. 2010).

5           Third, Plaintiff argues that the ALJ erred in relying on Plaintiff's ADLs to discredit his

6    symptom testimony because those activities did not contradict his subjective complaints.  Dkt. 12

7    at 10-11.  As explained above, the ALJ cited the following ADLs as undercutting Plaintiff's

8    credibility:  (1) his college attendance; (2) his past work as a music teacher; (3) his ability to cook,

9    clean, drive, shop, manage money, and use a computer; and (4) his activities such as running,

10   gardening, playing guitar and taking guitar lessons, hiking with friends, and helping his parents.

11   AR 20.  The ALJ cited these activities repeatedly throughout her decision.  *See, e.g.,* AR 17, 18,

12   20, 21, 22.

13          The ALJ's conclusion that Plaintiff's reported symptoms were inconsistent with his ADLs

14   was based on an incomplete and inaccurate characterization of the evidence and, therefore, was

15   not supported by substantial evidence.  For example, the ALJ repeatedly stated that Plaintiff was

16   in college until at least the summer of 2020, but failed to note that in the same timeframe Plaintiff

17   complained to his medical providers that he was struggling with academic work and having

18   difficulty focusing on online lectures.  AR 301-302, 306, 341.  Plaintiff testified at the hearing that

19   he had attended community college on and off for ten years but has not been able to complete his

20   degree, and that he took a single biology class in June 2020, almost failed, and found it too

21   stressful to continue to go to school.  AR 39-40.

22          Similarly, the ALJ repeatedly cited the fact that Plaintiff taught music, but failed to note

23   that Plaintiff's part-time employment as a music teacher was before his alleged onset date or that

24   Plaintiff was fired from that job after failing to interact appropriately with both a client and a

25   supervisor.  *See* AR 41-42, 49, 230, 343.

26          The ALJ also overstated Plaintiff's "ability to cook, clean, drive, shop, manage money, and

27   use a computer."  ALJ 17 (citing Exs. 5E and 4F).  A review of the cited exhibits shows that

28   although Plaintiff reported preparing his own meals daily, he spent less than 15 minutes on

cooking and prepared "easier meals."  AR 237.  He reported spending 30-60 minutes a day on cleaning or other chores.  *Id.*  Although Plaintiff stated that he could drive, he also stated that he goes outside only once or twice a week.  AR 238.  Some of his shopping was done by computer, and he spent about 15 minutes a week shopping.  *Id.*  Similarly, although the ALJ cited Plaintiff's interest in hobbies like gardening, music, chatting, and hiking (AR 20), Plaintiff had reported that he did not do these activities often.  AR 239.

In summary, the ALJ's depiction of Plaintiff's ADLs painted a different picture than the evidence the ALJ cited, which shows that Plaintiff engaged in the relevant activities on a far more limited basis.  Such "cherry-picked" evidence does not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.  *See J.M. v. Kijakazi*, No. 20-CV-07196-JCS, 2022 WL 617120, at *18 (N.D. Cal. Mar. 2, 2022).

Of even greater concern is that the ALJ ignored an important fact regardng some of the ADLs upon which the ALJ relied:  Plaintiff's therapist developed a treatment plan in March 2020 that included a goal of using coping skills to be motivated to get out of bed to perform at least one task daily.  AR 312-313.  Soon thereafter, Plaintiff reported trying to use gardening, researching, and making music as coping skills for his anxiety.  AR 306.  The ALJ ignored this critical context, using the fact that Plaintiff engaged in activities such as gardening and making music as a way to cope with his anxiety as a reason to shed doubt on the seriousness of that anxiety and other symptoms reported by Plaintiff.  Such a credibility finding, faulting Plaintiff for following a treatment plan, places a claimant such as Plaintiff in an impossible situation because, as the Commissioner acknowledges, his symptom allegations could also be discredited if he *failed* to follow a prescribed course of treatment.  *See* Dkt. 18 at 5 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).

In any event, to form the basis of an adverse credibility finding, a claimant's activities must either "(1) contradict her other testimony or (2) meet the threshold for transferable work skills."  *Sabin v. Astrue*, 337 Fed. Appx. 617, 620 (9th Cir. 2009) (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007)); *see also Jones v. Berryhill*, No. 18-CV-01857-WHO, 2019 WL 4645170, at *15 (N.D. Cal. Sept. 24, 2019).  As discussed above, the ALJ did not explain how

7

1   Plaintiff's actual ADLs contradicted his testimony.  Moreover, the ALJ must make "specific
2   findings relating to the daily activities and their transferability" to conclude that a claimant's daily
3   activities warrant an adverse credibility determination.  *Orn*, 495 F.3d at 639.  Most of the ADLs
4   upon which the ALJ relied did not "take up a substantial part of [Plaintiff's] day," and they
5   "overlap with, and are akin to, the activities [that have been] specifically recognized as non-
6   transferrable" by the Ninth Circuit.  *Griffin v. Saul*, No. 19-CV-07045-RS, 2021 WL 4992626, at
7   *10 (N.D. Cal. Feb. 8, 2021) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001)).

   For the reasons discussed, the ALJ's conclusion that Plaintiff's ADLs were inconsistent with the alleged severity of his impairments was not supported by specific, clear, or convincing evidence. Instead, the ALJ mischaracterized the context, extent, and significance of Plaintiff's ADLs.  The ALJ expressly premised her RFC determination at least in part on Plaintiff's purported ADLs.  *See, e.g.,* AR 21 (finding that Plaintiff is able to perform simple and detailed tasks (rather than only simple 1-2 step instructions) "[g]iven his typically at least average intellect, and the fact that he was recently in college … as well as some skilled activities of daily living (ADLs) such as driving"); AR 22 (finding Plaintiff capable of frequent interactions with known individuals given his work history, "such as his ability to be a  music teacher in the relatively recent past").  The ALJ's error in evaluating Plaintiff's credibility therefore was not harmless.

   Accordingly, for the reasons discussed above, on the issue of the ALJ's evaluation of Plaintiff's credibility, the Court **GRANTS** Plaintiff's motion and **DENIES** the Commissioner's cross-motion.

### B.  Issue Two:  Lay Witness Testimony

   Plaintiff's father testified at the ALJ hearing that his son has nightmares, sleeps sporadically, exhibits a poor memory and concentration, is reclusive, and does not achieve his goals.  AR 52-54.  Plaintiff points out, correctly, that the ALJ Decision did not mention that Plaintiff's father testified at the hearing, much less offer any analysis of that testimony.  Dkt. 12 at 13-14.  The Commissioner admits that "the ALJ did not address the testimony of Plaintiff's father." Dkt. 18 at 8.

1    Under long-standing Ninth Circuit law, "[i]n determining whether a claimant is disabled,
2  an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v.*
3  *Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations and quotation marks omitted). "Lay
4  testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account."
5  *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). An ALJ must have reasons that are
6  "germane to each witness" to reject lay witness testimony. *Id.*

7    The ALJ's failure to evaluate or even acknowledge the testimony of Plaintiff's father
8  would constitute error under the "germane reasons" standard. However, the Commissioner argues
9  that the revised regulation at 20 C.F.R. § 416.920b, [2] entitled "How we consider evidence,"
10 "contains no directive that ALJs must articulate reasons for how they valued nonmedical, i.e., lay
11 witness evidence." Dkt. 18 at 7 n.4. According to the Commissioner, the Ninth Circuit has
12 explained that "it is clear that [ALJs] are no longer required to articulate" their consideration of
13 nonmedical evidence under the revised regulations and that court "even noted that it is an 'open
14 question whether ALJs are still required to consider' nonmedical source statements under the
15 revised regulations at all." *Id.* at 8 (quoting *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630,
16 at *3 n.1 (9th Cir. Dec. 27, 2022)).

17   In considering the ALJ's obligations under the revised regulations with regard to lay
18 witness testimony, the Court notes that other courts in this Circuit have continued to apply the
19 germane reasons standard in determining whether an ALJ erred in evaluating lay witness
20 testimony, even in cases decided under the revised regulations. *See, e.g., Nicole N.-M. v. Comm'r,*
21 *Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1040 (D. Or. 2022) ("Under the 2017 regulations, the
22 ALJ is not 'required to articulate how [they] considered evidence from nonmedical sources' using
23 the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d),
24 416.920c(d). However, the ALJ must still articulate their assessment of lay witness statements.");

---

[2] Revised regulations went into effect on March 27, 2017, which include a change in how medical evidence must be evaluated and other changes. *See V.W. v. Comm'r of Soc. Sec.*, No. 18-cv-07297-JCS, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also* 20 C.F.R. § 404.1520c(a). This case is subject to those revised regulations.

*Tanya L.L. v. Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869 (D. Or. 2021) (same); *see also Weitman v. Kijakazi*, No. 21-35748, 2022 WL 17175060, at *2 n.4 (9th Cir. Nov. 23, 2022) (declining to reach the issue of whether 2017 changes to regulations eliminated germaneness standard for rejecting lay witness testimony "because the germaneness standard is satisfied here"); *K.F. v. Kijakazi*, No. 20-CV-08629-LB, 2022 WL 207661, at *8 (N.D. Cal. Jan. 24, 2022) (analyzing lay witness testimony under germane reasons case law where "[t]he Commissioner has briefed this case under the assumption that the Ninth Circuit's germane reasons case law continues to apply").

      The Court joins others in this Circuit in concluding that the ALJ must continue to consider lay witness testimony. As the Commissioner concedes, under the revised regulations, an ALJ must evaluate evidence "according to the rules pertaining to the relevant category," and lay witness evidence falls within the category of evidence from nonmedical sources. Dkt. 18 at 7 n.4; *see also* 20 C.F.R. § 416.913(a); 20 C.F.R. § 416.913(a)(4). The revised regulations specify that the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources" under the same requirements applicable to medical opinions and prior administrative medical findings." 20 C.F.R. § 416.920c(d). However, the revised regulations do not state that the ALJ is not required to consider evidence from nonmedical sources. In fact, several of the revised regulations indicate that nonmedical evidence among the evidence that the ALJ will "evaluate" (20 C.F.R. § 416.913(a)) and "consider" (20 C.F.R. § 416.920c(d)).

      Thus, lay testimony about a claimant's symptoms is "competent evidence that an ALJ must take into account." *Juan J. v. Kijakazi,* No. 20-cv-05797-DMR, 2022 WL 4310046, at *6 (N.D. Cal. Sep. 19, 2022) *6 (quoting *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)). "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment." *Tobeler v. Colvin,* 749 F.3d 830, 833-834 (9th Cir. 2014) (internal quotation marks, citations, and emphasis omitted). Even where an ALJ went beyond what the ALJ did in this case and summarized the third party's testimony, it was nevertheless error if the ALJ "did not state whether he took it into account or disregarded it" and did not offer "any specific reasons germane to [the witness] to reject her testimony." *Juan J. v. Kijakazi*, 2022 WL 4310046, at *6.

1 	The Commissioner argues that any error in the ALJ's failure to properly evaluate the testimony of Plaintiff's father was harmless "because the nonmedical testimony of Plaintiff's father was substantially similar to Plaintiff's Function Report and testimony" and could be properly discounted for the same reasons the ALJ discounted Plaintiff's similar testimony. Dkt. 18 at 8.  However, as discussed in section IV.A. above, the Court concludes that the ALJ erred in discounting Plaintiff's testimony.  Moreover, to the extent the Commissioner offers this as a reason why the ALJ might have been justified in rejecting the testimony of Plaintiffs' father, this Court is unable to review reasons for the rejection of testimony that the ALJ herself did not provide.  *Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL 4519952, at *8 (N.D. Cal. Sept. 19, 2018) (citing *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks, alterations, and citation omitted)).

	Accordingly, the ALJ's error in failing to properly evaluate the testimony of Plaintiff's father was not harmless, and the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment on this issue.

### C. Issue Three:  Evaluation of the medical evidence

	Plaintiff argues that the ALJ failed to properly analyze the supportability and consistency of the medical opinions and that her findings were not supported by substantial evidence.  Dkt. 12 at 14-22.  Under the revised Social Security Administration regulations that apply in this case, the ALJ was required to consider all medical opinions and "evaluate their persuasiveness" based on the following factors:  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors."  20 C.F.R. §416.920c(a)-(c).  The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability and the ALJ is required to explicitly address supportability and consistency in her decision.  20 C.F.R. § 416.920c(a), (b)(2); *see also Woods v. Kijakazi,* 32 F.4th 785, 791-793 (9th Cir. 2022). The ALJ may, but is not required to, explain how she considered the remaining three factors. 20 C.F.R. § 416.920c(b)(2).  The new regulations "displace [the Ninth Circuit's] longstanding case law" requiring an ALJ to articulate "specific and legitimate reasons" for rejecting a treating

11

1    physician's opinion where the opinion is contradicted by other medical opinions. *Woods,* 32 F.4th
2    at 787.
3        "Supportability means the extent to which a medical source supports the medical opinion
4    by explaining the 'relevant ... objective medical evidence.' " *Woods*, 32 F.4th at 791-92; *see*
5    *also* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and
6    supporting explanations presented by a medical source are to support his or her medical opinion(s)
7    or prior administrative medical finding(s), the more persuasive the medical opinions or prior
8    administrative medical finding(s) will be"). "Consistency means the extent to which a medical
9    opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in
10   the claim.'" *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §416.920c(c)(2) ("The more consistent a
11   medical opinion(s) or prior administrative medical finding(s) is with the evidence from other
12   medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)
13   or prior administrative medical finding(s) will be").
14       As with all other determinations made by the ALJ, the ALJ's persuasiveness explanation
15   must be supported by substantial evidence. *See Woods,* 32 F.4th at 792; *see also Azia B. v.*
16   *Kijakazi*, No. 22-cv-01731-TSH, 2023 WL 1442841, at *7 (N.D. Cal. Feb. 1, 2023).
17       Plaintiff faults the ALJ for "discredit[ing] the favorable opinions of a state agency
18   consultant, a consultative examiner, a treating therapist, and two treating doctors in favor of the
19   opinion of the one agency consultant who reviewed the case at the initial application level" and
20   argues that "the ALJ's findings discrediting these five separate medical opinions were not
21   supported by substantial evidence." Dkt. 12 at 14.

22              **1.    Agency Consultants:  Drs. Ibarra and Khan**
23       In connection with agency review of Plaintiff's initial application, State agency
24   psychological consultant G.R. Ibarra, M.D., opined that Plaintiff "retains the ability to understand,
25   remember, carry out and sustain activities that are simple and detailed, under ordinary
26   supervision." AR 68. Later, upon reconsideration, State agency psychological consultant
27   S. Khan, M.D. opined that Plaintiff can perform "non-public simple unskilled/one-two step work."
28   AR 82. The ALJ found that the opinions of Drs. Ibarra and Khan were supported by the file

1  review and written statements they provided and were mostly consistent with the medical evidence
2  of record.  AR 21.  The ALJ concluded that both opinions were "partially persuasive," although
3  she found Dr. Ibarra's determination to be "best supported."  *Id.*

4  Plaintiff attacks Dr. Ibarra's opinion because Dr. Ibarra based his finding that Plaintiff
5  could perform simple and detailed tasks on his finding that Plaintiff was able to make purchases
6  on a computer, drive, and "manage finances."  Dkt. 12 at 15 (citing AR 65-69).  Plaintiff also
7  takes issue with the fact that the ALJ adopted Dr. Ibarra's opinion that Plaintiff could perform
8  simple and detailed tasks rather than Dr. Khan's opinion that Plaintiff was limited to performing
9  simple 1-2 step instructions in a non-public setting.  Dkt. 12 at 15.  As Plaintiff points out,
10 "Dr. Khan had the benefit of reviewing at least two additional mental health records from treating
11 providers than Dr. Ibarra."  *Id.* (citing AR 80).

12 The reasons offered by the ALJ for adopting Dr. Ibarra's opinion, rather than Dr. Khan's
13 opinion, as to complexity of tasks were not sufficient.  In support of her preference, the ALJ
14 pointed to Plaintiff's "at least average intellect, and the fact that he was recently in college, and
15 did not have any IEP when in high school, as well as some skilled activities of daily living (ADLs)
16 such as driving."  AR 21.  The ALJ's conclusions in this regard were reflected in the RFC, which
17 found Plaintiff capable of performing "simple and detailed but not complex tasks."  AR 18.

18 However, Plaintiff does not claim that he has an intellectual disability; instead, as the ALJ
19 found, Plaintiff has anxiety, ADHD, PTSD, and other mental impairments.  AR 16.  Moreover,
20 Plaintiff's alleged onset date is August 31, 2019, when he was 28 years old (*see* AR 186), so the
21 lack of an IEP during high school is not pertinent.  Similarly, the ALJ did not explain why
22 Plaintiff's ability to drive bears on the question of whether he can perform simple and detailed
23 tasks or is instead limited to performing simple 1-2 step instructions in a non-public setting.

24 For these reasons, the ALJ's conclusion that Dr. Ibarra's opinion was more persuasive than
25 Dr. Kahn's opinion concerning the complexity of tasks Plaintiff can handle was not supported by
26 substantial evidence.

27 This error was not harmless because at the hearing, the ALJ posed a hypothetical to the
28 vocational expert ("VE") utilizing a limitation identical to that articulated in her RFC assessment,

inquiring whether there are other jobs that could be performed by an individual who can perform simple and detailed, but not complex, tasks. *E.S. v. Kijakazi,* No. 20-cv-06550-JCS, 2022 WL 4292333, at *16 (N.D. Cal. Sep. 16, 2022); *see also* AR 55-56.  The VE responded affirmatively, and the ALJ subsequently found Plaintiff not disabled.  AR 25-26, 55-56.

### 2. Treating Providers: Dr. Nguyen, Dr. Kecskes, and Yao-Szu Tsou, LMFT

Three of Plaintiff's treating medical providers completed forms regarding Plaintiff's limitations:  Tac Nguyen, M.D. (Plaintiff's therapist and treating psychiatrist); Diane Kecskes, M.D. (a treating psychiatrist); and Yao-Szu Tsou, LMFT (a therapist).  AR 340; AR 371; AR 293.  The ALJ found the opinions of these treating providers "collectively unpersuasive" for five reasons:  (1) they contain opinions on matters reserved to the Commissioner; (2) Tsou completed the form four months prior to the alleged onset date and did not reference any specific treatment notes; (3) there was evidence of improvement over time based on Plaintiff's "often normal" moods on mental status examinations and discontinuing some medications; (4) the opinions from Drs. Nguyen and Kecskes were not well-supported and were inconsistent with Plaintiff's reports and objective findings; and (5) Dr. Kecskes opined that the stated limitations had been present since August 2019 but Plaintiff was not treated by her agency until February 2020.  AR 23.

On a form prepared for a general assistance program, Dr. Nguyen opined that Plaintiff had significant restrictions/limitations of activities of daily living or employment because he was "unable to concentrate/to focus."  AR 340.  Dr. Nguyen also checked boxes stating that Plaintiff had "significant deficiencies of concentration, persistence or pace" and was "incapable of low stress jobs."  *Id*.  Dr. Nguyen identified a mental status exam as the objective evidence of these limitations.  *Id.*  The ALJ explained why she found Dr. Nguyen's opinion unpersuasive.  She identified the mental status exam on September 14, 2021 as the one closest in time to the date Dr. Nguyen completed the form (September 12, 2021).  AR 23.  Neither Dr. Nguyen's notes of that September 14, 2021 exam nor the notes of his previous July 21, 2021 exam mention that Plaintiff had problems with concentration.  *See* AR 365-367.  Plaintiff argues that Dr. Nguyen's

14

findings regarding Plaintiff's flat affect, slow speech, concrete (rather than coherent) thought, confabulation of memory impairment, limited insight, and poor judgment "more than support his opinions regarding [Plaintiff's] difficulties staying focused and handling even low stress in a full-time work environment." Dkt. 12 at 17 (citing AR 23). However, the Court does not find these findings sufficiently tied to Plaintiff's ability to concentrate to undermine the ALJ's decision to give Dr. Nguyen's opinion little weight.

Dr. Kecskes completed a questionnaire on March 24, 2022 in which she stated Plaintiff could not sustain any kind of full-time work because various conditions "interfere with [Plaintiff's] ability to sustain focus, concentration and attention" and that "[h]e is easily overwhelmed which causes poor organization planning or sequencing activities." AR 371. Dr. Kecskes further opined that Plaintiff's impairments were likely to produce "good days" and "bad days" and that he likely would miss more than four days of work per month due to his impairments. *Id.* Dr. Kecskes stated that the earliest date that these limitations would apply was August 2019. *Id.* The ALJ discussed the records of Plaintiff's treatment by Dr. Kecskes and her agency, and concluded that Plaintiff's "subjective reports and objective findings do not support [Dr. Kecskes'] opinions as to inability to concentrate/focus, being overwhelmed, needing extra breaks, or missing days of work" and that, overall, her opinions "are not well supported by or consistent with the progress notes in the record." AR 23-24. Plaintiff argues with how the ALJ weighed the evidence concerning Dr. Kecskes' opinion but has not demonstrated that the ALJ erred.

Therapist Tsou wrote a letter on June 16, 2020 stating that Plaintiff had been a client of her organization since February 25, 2020. AR 293. Tsou stated that Plaintiff had posttraumatic stress disorder and generalized anxiety disorder. *Id.* Tsou opined that Plaintiff "has difficulties with working and with memory" that would "distract[] [Plaintiff] from being able to recall memory unrelated to the [prior traumatic] incidents" and would cause Plaintiff to "feel overwhelmed by the anxiety at times and would render him incapable of action." *Id.* The Court finds no error in the ALJ's conclusion that this form was "not supported by any specific reference to treatment notes." AR 23.

1    Accordingly, the Court does not find error with the ALJ's evaluation of the opinions of Dr.
2    Nguyen, Dr. Kecskes, and therapist Tsou.

### 3. Agency Consultative Examiner: Dr. Spivey

The agency consultative psychological examiner, Patricia Spivey, Psy.D., did not offer functional opinions but rated various activities and skills as being impaired from the level of "none" to "marked." AR 335. Dr. Spivey found that Plaintiff had no limitations on following instructions of any complexity, maintaining pace/persistence for tasks of any complexity, and communicating effectively verbally and in writing. *Id.* Dr. Spivey found mild limitations in Plaintiff's ability to maintain adequate attention/concentration and adapt to changes. *Id.* Dr. Spivey found moderate to marked limitations in Plaintiff's ability to interact appropriately with others on a daily basis. *Id.* Dr. Spivey found Plaintiff to have marked limitations in withstanding the stress of a normal workday and maintaining emotional stability/predictability. *Id.*

The ALJ found Dr. Spivey's opinion that Plaintiff had marked limitations in certain areas "not persuasive," for two reasons: (1) the ALJ found some of the findings to be internally inconsistent, and (2) the ALJ found that the objective findings and the examination did not support marked limitations. AR 24. The ALJ explained each of these reasons and then concluded that "Dr. Spivey's marked findings are not persuasive because they are not well supported by this exam and are not consistent with the collateral record." *Id.*

Plaintiff argues that the ALJ erred in dismissing Dr. Spivey's "marked" limitations because the ALJ's analysis was conclusory and was not supported by substantial evidence. Dkt. 12 at 20. The ALJ discussed, with citations to the record, the consistency and supportability of Dr. Spivey's opinions that Plaintiff had marked limitations in two areas. AR 24. However, the Court finds the ALJ's explanation of why she found Dr. Spivey's opinions not persuasive to be inadequate. The ALJ explained her conclusion that "some of the findings on this form are internally inconsistent" by giving the following examples: (1) "a person who was markedly impaired in managing stress and emotional stability *would be expected* to have the same difficulty in concentrating, persisting,

16

1   and maintaining pace, as such marked symptomology would interfere with staying on task"; and

2   (2) "his ability to communicate effectively *would be expected* to be impaired by emotional lability

3   and the inability to respond appropriately to stress."  AR 24 (emphasis added).  The ALJ's

4   "analysis" as to "expected" symptoms is not supported by any citations to medical evidence or

5   other authority and is therefore speculative and inappropriate.  "An ALJ cannot arbitrarily

6   substitute [her] own judgment for competent medical opinion, and [she] must not succumb to the

7   temptation to play doctor and make [her] own independent medical findings."  *E.S. v. Kijakazi,*

8   2022 WL 4292333, at *15 (quoting *Banks v. Barnhard*, 434 F. Supp. 2d 800, 805 (C.D. Cal.

9   2006)).

10          The ALJ's conclusion that Dr. Spivey's "marked" findings were not well supported by

11  Dr. Spivey's exam of Plaintiff was also flawed.  In reaching this conclusion, the ALJ cited factors

12  such as Plaintiff's normal IQ and memory test results and linear thought process (AR 24), but did

13  not explain how these factors were relevant to Plaintiff's ability to withstand the stress of a normal

14  workday and or maintain emotional stability/predictability.

15          The ALJ's error in evaluating Dr. Spivey's opinion that Plaintiff had marked limitations in

16  withstanding the stress of a normal workday and maintaining emotional stability/predictability was

17  prejudicial because the ALJ's RFC determination included frequent interaction with supervisors,

18  coworkers, and known members of the public, the ability to perform work with goal-oriented

19  productivity expectations, and the ability to adapt to occasional changes in the workplace.  AR 19.

20  The hypothetical the ALJ posed to the VE at the hearing included these elements from the RFC.

21  AR 55-56.  The VE testified that if a person were off task 15% of the workday or was consistently

22  absent as little as two days a month due to their impairments, it would "eliminate all competitive

23  work."  AR 56-57.  Because the hypothetical posed by the ALJ included no off-task time or

24  absences due to an inability to withstand stress or maintain emotional stability and assumed the

25  ability to be get along with others and be productive and adaptable, the ALJ's error in evaluating

26  Dr. Spivey's opinion was not harmless.  *See E.S. v. Kijakazi,* 2022 WL 4292333, at *16.

27          Accordingly, the ALJ's finding that Dr. Spivey's opinions that Plaintiff had marked

28  limitations in certain areas was not supported by substantial evidence.

#### 4. Conclusion on evaluation of medical evidence

For the reasons discussed above, the Court concludes that the ALJ erred in evaluating certain of the medical evidence. Moreover, the errors discussed in sections IV.A. and IV.B. above in the ALJ's analysis of the testimony of Plaintiff and his father could have impacted the ALJ's assessment and the weight she gave to Plaintiff's medical examinations. *See Juan J. v. Kijakazi,* 2022 WL 4310046, at *6. Therefore, on the issue of the ALJ's evaluation of the medical evidence, the Court **GRANTS** Plaintiff's motion and **DENIES** the Commissioner's cross-motion.

### D.  Issue Four:  Incorporation of Social Interaction Limitations in RFC

Plaintiff argues that the ALJ's determination that Plaintiff is able to frequently interact with coworkers, supervisors, and "familiar members of the public (such as known clients)" but only occasionally interact with unknown members of the public was not supported by substantial evidence.  Dkt. 12 at 22 (citing AR 19).

The ALJ is responsible for "translating and incorporating" the evidence of record "into a succinct RFC." *Rounds*, 807 F.3d at 1006; 20 C.F.R. § 416.945(a)(i) (requiring that RFC assessment be "based on all the relevant evidence"); 20 C.F.R. § 416.946(c) (stating that ALJ is "responsible for assessing [the] residual functional capacity.").  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including … medical records, lay evidence, and the effects of symptoms that are reasonably attributed to a medically determinable impairment." *Leonard v. Colvin,* 633 Fed. Appx. 362, 364 (9th Cir. 2015) (internal quotation marks and citations omitted).  "[A]n RFC that fails to take into account a claimant's limitations is defective." *Id.* (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

The ALJ noted that "Dr. Ibarra adopted no social limitations and Dr. Khan precluded public interaction." AR 22. The ALJ "found [Plaintiff] both more and less limited in providing for frequent interactions except for only occasionally with strangers." *Id.* The ALJ offered the following explanation:

> This is based on his work history, such as his ability to be a music teacher in the relatively recent past, which suggests he can interact appropriately with clients who are known to him but may have difficulty interacting with the general public (such as in the coffee shop settings in which he previously worked) due to mood changes, anxiety, and reported irritability at times.  [] In addition, I observe, however, that he was described as "nice" and cooperative by the field office interviewer.  []

AR 22 (record citations omitted).  Elsewhere in her decision, the ALJ concluded that Plaintiff had "moderate limitation" in interacting with others.  AR 17.  The ALJ again noted the following considerations in support of this conclusion:  Plaintiff reported the ability to drive and go shopping in stores; he was in college until at least the summer of 2020 and possibly later; his activities have included running, gardening, and taking guitar lessons; he has reported teaching music, hiking with friends, and helping his parents; and he can follow spoken and written instructions and he gets along with authority figures.  *Id.*

The ALJ's explanation did not identify adequate support for her RFC finding as to Plaintiff's ability to engage in social interactions.  The ALJ failed to explain how some of the facts she mentioned—such as Plaintiff's ability to drive and engagement in activities such as gardening—involved interaction with others or were sustained enough to be relevant to Plaintiff's ability to engage in social interactions in a work environment.  The ALJ's recitation of other facts that more directly relate to Plaintiff's social interactions was incomplete.  For example, the ALJ stated that the fact that Plaintiff was a music teacher in the relatively recent past suggested he could interact appropriately with clients that are known to him.  AR 22; *see also* AR 17.  However, as discussed in section IV.A. above, the ALJ failed to address the facts that Plaintiff was employed as a part time music teacher was before his alleged onset date or that Plaintiff was fired from that job after failing to interact appropriately with both a client and a supervisor.  *See* AR 41-42, 49, 230, 343.  Similarly, the ALJ cited the fact that Plaintiff attended some college classes but did not address the facts that Plaintiff's classes were online or that he struggled with them and ultimately gave up pursuing his education.  AR 40, 301-03, 306, 341.  The Plaintiff's occasional engagement in other social interactions cited by the ALJ, such as hiking with friends (which Plaintiff reported that he did not do often (AR 239)) and being "nice" and "cooperative" in a single interview, are insufficient to support the ALJ's social interaction findings.

In addition, in determining a claimant's RFC, the ALJ must consider "all relevant evidence in the record." *Leonard,* 633 Fed. Appx. at 364. As discussed in sections IV.A., IV.B., and IV.C. above, the ALJ erred in evaluating Plaintiff's credibility, the testimony of Plaintiff's father, and the medical opinion evidence. On remand, the ALJ must correctly evaluate the relevant evidence in the record in developing Plaintiff's RFC.

Accordingly, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgment on the issue of the social interaction limitations in the RFC.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant Commissioner's cross-motion for summary judgment. It is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, and therefore remand is appropriate. *Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018). Accordingly, the Court **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: March 6, 2024

SUSAN VAN KEULEN
United States Magistrate Judge